UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                  Case No. 8:16-cr-509-T-33SPF

SHEENA V. BERRY

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Sheena Berry's Second Motion for Compassionate Release (Doc. # 80), filed on August 27, 2020. The United States responded on September 10, 2020. (Doc. # 82). With leave of Court, Berry filed a reply on September 18, 2020. (Doc. # 85). For the reasons set forth below, the Motion is denied.

I.  **Background**

On June 25, 2018, Berry pled guilty to theft of government funds in violation of 18 U.S.C. § 641 and aggravated identity theft in violation of 18 U.S.C. § 1028(A). (Doc. # 26). On March 18, 2019, the Court sentenced Berry to forty-two months' imprisonment, followed by thirty-six months' supervised release. (Doc. # 60). Berry is thirty-five years old and her projected release date from Tallahassee FCI is June 12, 2021. Federal Bureau of Prisons, Inmate Locator,

1

https://www.bop.gov/inmateloc (last visited Oct. 10, 2020).

Berry previously filed a motion for compassionate release on April 15, 2020 (Doc. # 68), which the Court denied without prejudice for failure to exhaust administrative remedies. (Doc. # 72). In this Motion, Berry renews her request for compassionate release under Section 3582(c)(1)(A)(i), as amended by the First Step Act, because of the COVID-19 pandemic, her underlying health conditions, which include obesity, primary hyperlipidemia, migraines, a brain cyst, and anxiety associated with depression. (Doc. # 80 at 3-6). Alternatively, Berry requests that the Court reduce her sentence to the extent necessary to make her eligible for release to home confinement or a halfway house. (Id. at 6).

The United States has responded (Doc. # 82), and Berry replied. (Doc. # 85). The Motion is now ripe for review.

**II. Discussion**

    **A. Request for Home Confinement**

To the extent that Berry's Motion is construed as requesting that the Court grant her home confinement, it must be denied. The Court has no authority to direct the Bureau of Prisons (BOP) to place Berry in home confinement because such decisions are committed solely to the BOP's discretion. See

United States v. Calderon, No. 19-11445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that district courts lack jurisdiction to grant early release to home confinement pursuant to the Second Chance Act, 34 U.S.C. § 60541(g)(1)(A)). Once a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarceration to serve that sentence. See Tapia v. United States, 564 U.S. 319, 331 (2011) ("A sentencing court can recommend that the BOP place an offender in a particular facility or program . . . [b]ut decision making authority rests with the BOP."); 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment[.]").

Therefore, Berry's construed request for home confinement falls outside Section 3582(c)'s grant of authority. The Motion is denied as to this requested relief.

### B.  **Request for Compassionate Release**

The United States argues that Berry's Motion for Compassionate Release should be denied (1) because Berry has failed to exhaust her administrative remedies and (2) on the merits. (Doc. # 82 at 2-3). The Court concludes that, even if Berry has exhausted her administrative remedies, her Motion must be denied because her circumstances are not extraordinary and compelling.

3

A term of imprisonment may be modified only in limited circumstances. 18 U.S.C. § 3582(c). Berry argues that her sentence may be reduced under Section 3582(c)(1)(A)(i), which states:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant **after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier**, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that [ ] extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added). "The First Step Act of 2018 expands the criteria for compassionate release and gives defendants the opportunity to appeal the [BOP's] denial of compassionate release." United States v. Estrada Elias, No. 6:06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019) (citation omitted). "However, it does not alter the requirements that prisoners must first exhaust administrative remedies before seeking judicial relief." Id.

Here, Berry alleges that she has exhausted her administrative remedies: "Mrs. Berry did make a request for compassionate release, and she appealed the denial of that

4

request. While in an effort to improve her chances Mrs. Berry sometimes discussed being released to home confinement, her April 17, 2020, email made it clear that she was seeking compassionate release from imprisonment in whatever form the BOP was willing to provide her. Accordingly, Mrs. Berry exhausted her administrative remedies." (Doc. # 85 at 3) (citation omitted). Based on this representation, the Court treats Berry's administrative remedies as exhausted. However, Berry has not sufficiently demonstrated extraordinary and compelling circumstances warranting her release.

The Sentencing Commission has set forth examples of qualifying "extraordinary and compelling reasons" for compassionate release, including but not limited to: (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. USSG §1B1.13, comment. (n.1). Berry bears the burden of establishing that compassionate release is warranted. See United States v. Heromin, No. 8:11-cr-550-T33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) ("Heromin bears the burden of establishing that compassionate release is warranted.").

Although Berry alleges that her underlying health

5

conditions of obesity and hyperlipidemia place her "at a significantly increased risk of severe complications and death if she contracts COVID-19" (Doc. # 85 at 11), she has not sufficiently demonstrated that she has a serious medical condition that substantially diminishes his ability to care for herself in her facility. See USSG §1B1.13, comment. (n.1); see also United States v. Frost, No. 3:18-cr-30132-RAL, 2020 WL 3869294, at *4-5 (D.S.D. July 9, 2020) (denying motion for compassionate release for a COVID-19-positive prisoner who had other medical conditions, including diabetes, severe coronary artery disease, and COPD, because his COVID-19 symptoms were not severe and there was no indication he could not provide self-care while in prison); United States v. Battis, No. 8:15-cr-429-T-02AAS, 2020 WL 5094844, at *2 (M.D. Fla. Aug. 28, 2020) ("Although obesity poses an increased risk of severe illness from the virus, it does not establish an extraordinary and compelling circumstance.").

Additionally, the Court agrees with the Third Circuit that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's

6

spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Thus, Berry has not shown an extraordinary and compelling reason that justifies compassionate release and her Motion is denied.

While Berry's concerns about the COVID-19 pandemic are understandable, the Court notes that several measures have already been taken in response to the pandemic. For example,

> [u]nder the recently enacted CARES Act, Pub. L. No. 116-136, § 12003(b)(2) (2020), "if the Attorney General finds that emergency conditions will materially affect" the BOP's functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2). The Attorney General has made such a finding regarding the emergency conditions that now exist as a result of the coronavirus. See Memorandum from Attorney Gen. William Barr to Director of Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

United States v. Engleson, No. 13-cr-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020). In addition, the BOP has established numerous procedures to combat the spread of COVID-19 within its facilities. See Federal Bureau of Prisons, Updates to BOP COVID-19 Action Plan: Inmate Movement, available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last updated Mar. 19, 2020).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

7

Defendant Sheena V. Berry's Second Motion for Compassionate Release (Doc. # 80) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of October, 2020.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE